## PEOPLE v. HAMMERSTEIN et al.

### (Court of Special Sessions of First Division of City of New York. September 7, 1911.)

SUNDAY (§ 29\*)—CRIMINAL PROSECUTION—PERSONS INDICTABLE—THEATER MANAGERS AND PERFORMERS.

> Penal Law (Consol. Laws 1909, c. 40) § 2152, entitled "Theatrical and Other Performances on Sunday," forbids performances on Sunday, and makes every person aiding in such performance, by advertisement, posting, or otherwise, and every owner or lessee of any building who leases it for such performance, guilty of a misdemeanor. Performers at a theater were informed against, jointly with the managers thereof, for giving a stage exhibition of jugglery on Sunday of a kind forbidden by the Penal Law, and in that the managers, by advertisement and otherwise, aided the performance by permitting the stage to be used therefor, by admitting persons who had paid an admission, and by distributing programs. *Held,* on demurrer, that the information charged more than one offense, the purpose of the statute not being to change the status of actors or others who labor in a theater on Sunday, who should be proceeded against under section 2145, providing for a fine of not more than $10.

> [Ed. Note.—For other cases, see Sunday, Cent. Dig. §§ 13, 67–72; Dec. Dig. § 29.\*]

> O'Keefe, J., dissenting.

William Hammerstein and others were charged with crime. A demurrer to the information sustained. Reversed in 139 N. Y. Supp. 1075.

Argued before O'KEEFE, OLMSTED, and MOSS, JJ.

Lloyd P. Stryker, Deputy Asst. Dist. Atty., of New York City, for the People.

House, Grossman & Vorhaus, of New York City, for defendants.

OLMSTED, J. The defendants are accused on information of the district attorney with the crime of unlawfully giving a theatrical performance on Sunday in violation of the provisions of section 2152 of the Penal Law (Consol. Laws 1909, c. 40). The recitals of the information fix the date of the commission of the offense as of November 27, 1910. The offense is characterized in the language of the opening section of article 192 of the Penal Law relative to "Sabbath breaking." Defendants Hammerstein and Blumenthal are charged with having been "the persons in charge and control and the managers of a theater and place of public amusement called the Manhattan Opera House," in the county of New York; that on the day in question in said theater, before an audience who had paid for admission thereto, defendant Harrigan gave a performance and exercise of juggling (describing it); that upon the same stage, on the same day, and before the same audience, defendant Bedini, with another not named, gave a performance of jugglery (also described); that before the same audience two other persons, designated on program and cards as "McDevitt & Kelly" gave a performance of "negro and other dancing," and that another person, similarly designated as "Ray Cox" did

give "a performance of the stage and of dancing." Defendants Hammerstein and Blumenthal are charged with having caused and permitted said programs and cards to be displayed, distributed, and circulated in said theater.

The information concludes with the following allegations:

"And the said William Hammerstein and George Blumenthal then and there, by advertisement and otherwise, did aid in the said performances of jugglery, of the stage and of dancing, by causing and permitting the said stage to be used therefor and divers of the employés of the said theater to prepare the said stage for such use, and by causing, permitting, counseling, and commanding a person acting as a ticket taker to admit into the said theater the said persons who had theretofore paid the said admission fee, and by counseling, commanding, causing, and permitting divers other persons employed and being in the said theater to direct and permit the said persons so admitted to occupy seats and points of vantage viewing the said stage and the said performances, and by causing, permitting, counseling, and commanding divers employés and persons being in the said theater to display, circulate, and distribute as aforesaid the said cards and printed programs and instruments giving notices of the said dancing as well as of the said jugglery, against the form of the statute in such case made and provided, and against the peace of the people of the state of New York and their dignity."

Each of the defendants demurs to the information herein on the ground of duplicity. It is particularly urged that there is a joinder of several offenses in one count—crimes different in their nature, the punishment which might be inflicted on conviction for some being merely nominal while in the matter of another the extreme penalty for misdemeanor might be imposed.

There is no doubt that the performance given in the Manhattan Opera House on the day in question, as described in the information, is such as is inhibited by the section of the Penal Law which the district attorney invokes in his pleading. "Negro or other dancing" and "any performance or exercises of jugglery" are expressly forbidden thereby.

"And every person aiding in such exhibition, performance or exercises, by advertisement, posting or otherwise, and every owner or lessee of any garden, building or other room, place or structure, who leases or lets the same for the purpose of any such exhibition or performance or exercises, or who assents to the use of the same for any such purpose, if it be so used, is guilty of a misdemeanor." The portion of section 2152 quoted includes all who may be punished for giving such a performance in a theater on Sunday. Whether all of the defendants named come within the statutory classification is at issue. The defendants Harrigan and Bedini and three other performers not arrested are charged in the information with giving the performance, and the defendants Hammerstein and Blumenthal with aiding and abetting them in the manner heretofore described. This portion of the pleading is negatived by the averment that Hammerstein and Blumenthal were the managers of the theater. It is matter of common knowledge that managers are the principals in the matter of theatrical performances, and that the performers are merely laborers for hire. Disregarding the peculiarity of the pleading in this particular and

reversing the alleged relationship of the defendants, we are called on to determine whether defendants Harrigan and Bedini aided and abetted defendants Hammerstein and Blumenthal in giving the Sunday theatrical performance charged. This involves a study of the law regarding so-called Sabbath breaking, its origin and inception.

In 1813 the Legislature of this state, in chapter 24 of the first Revised Laws (2 Rev. Laws 1813, p. 193), collated the common-law and statutory provisions then in force which prohibited the doing of certain acts on Sunday. These were re-enacted in the first Revised Statutes of 1828 (1 Rev. St. [1st Ed.] pt. 1, tit. 8, c. 22, art. 8, §§ 69–72), and were continued in force with few changes as to form until the adoption of the Penal Code in 1881. The Penal Code devoted an entire chapter to the subject, beginning with section 259, and ending with section 277, which latter section, with some trifling amendments which do not affect the issues herein, has been continued as section 2152 of the Penal Law. Before its inclusion in the Penal Code this section was chapter 501 of the Laws of 1860, and its provisions were only applicable in the city and county of New York. Its application was made general by the Code.

Inquiry is now directed to reasons for the enactment of chapter 501 of the Laws of 1860, which has become section 2152 of the Penal Law, and the legislative intent in its enactment.

Prior to 1860 the laws prevented Sabbath breaking in the form of "servile labor or working," which was a necessary part of a theatrical performance both on the part of the attachés of a theater and the performers. The penalty which might be inflicted on a violator of the law, however, was limited to a fine of $1. An infliction of this penalty upon every attaché of a theater and upon every performer at a Sunday performance would be cheerfully paid by the manager as a sort of license for carrying on a very lucrative business on Sunday. Careful consideration of conditions at the time of this enactment confirms the conclusion that it was not the legislative intent thereby to provide for the imposition of any greater penalty for ordinary labor for hire on Sunday than might theretofore have been imposed under existing laws. It was only sought to provide a more effective way of dealing with a situation which had arisen in this city. The Sabbath-breaking laws were extended in their scope. Laborers and givers of common shows on the street or other public places were to be dealt with as formerly under the old provisions of law, but something more drastic in the way of punishment was to be provided for the theatrical managers who dared give Sunday performances, or the owners or lessees of theaters who permitted such shows to be given on their property. The full penalty provided for a misdemeanor might be imposed on such persons should they be convicted of violating the statute. Added penalties are the forfeiture of the license for the theater and a penalty of $500 to be recovered in a civil action. Besides provision for the punishment of managers, owners, and lessees of theaters the Legislature made a distinct departure in this statute by declaring the liability to punishment of persons who might be guilty of acts committed on secular days to promote the giving of Sunday

theatrical performances. This intent is to be found in that part of the section which provides that "every person aiding in such exhibition, performance or exercise by advertising, posting or otherwise * * * is guilty of a misdemeanor."

Without advertising the intention to give a Sunday performance, which advertising might be and usually is done on other days of the week than Sunday, there would be little likelihood of the giving of such performance. The reason is obvious.

It is the contention of the people in this case that the defendants Harrigan and Bedini gave the performance in question, and that the defendants Hammerstein and Blumenthal aided them in giving it within the meaning of the statute. As has already been said, this averment is negatived by the allegation that Hammerstein and Blumenthal were the managers of the theater, and I am put to the inquiry as to whether defendants Harrigan and Bedini aided in giving the performance by the acts which are recited in the information as having been committed by them.

Had the two defendants last named performed as jugglers in the streets on Sunday—such performance being given before a noisy crowd and to the accompaniment of a hurdy gurdy and base drum—they could, on conviction as for a first offense, have been fined not exceeding $10 under the provisions of section 2145 of the Penal Law. The ticket seller, the ticket taker, the program boy, the ushers, and all the stage hands employed in the Manhattan Opera House at this performance might have been joined as defendants in this action on the ground of aiding in giving the performance in question, within the meaning of the statute. It must be conceded, however, that such labor as they performed on this occasion, if performed elsewhere than in a theater on Sunday, would only subject them on conviction under the provisions of section 2143 of the Penal Law to a fine not exceeding $10.

The juggler, acrobat, or other performer of the stage is a laborer for hire, and, when he works on Sundy in violation of the law, he is subject to the same penalty which may be visited on other laborers. Section 2143, Penal Code. If he appears as a strolling player, giving public shows and passing the hat for the small coin of the crowd, he is to be proceeded against under section 2145 of the Penal Law.

The conclusion is inevitable that the legislative intent in enacting section 2152 of the Penal Law was not to change the status of one who labors in a theater on Sunday and subject him to severer penalties than other laborers, but rather to add to the list of possible Sabbath breakers, a class, the members of which, if prosecuted and punished with severity, would see to it that there is no Sunday labor in any of the theaters on the first day of the week. The early prosecutions under this statute were, on this theory, maintained against the managers of theaters only, and no attempt was made to join performers as defendants. Lindenmuller v. People, 33 Barb. 548.

The doctrine of ejusdem generis should always be invoked as an aid to the interpretation of a statute, and the idea of giving to the statute full force and effect rather than to limit it. It is with this in mind that it is here applied. Do the words "and otherwise," where used in the section of law under consideration, include the ticket seller, the

ticket taker, the program distributor, the ushers, the stage hands, and performers at the Manhattan Opera House on the occasion mentioned in the information, as well as the owners and lessees of the building itself, the managers of the theater and all those who by bill posting or other advertising gave advance notice of the performance? The suggestion in the information that the distribution of programs and placing of such cards in the theater during the performance was such an advertising as is contemplated by the statute is not worthy of serious consideration.

Study of the law and the purpose of its enactment leads me to the belief that there was not legislative intent to make it exclusive in its application to Sunday labor in theaters, or by it to amend either section 2143 or 2145 of the Penal Law; that the provisions of section 2143 control in the matter of Sunday labor, whether such labor be performed in a theater or elsewhere; that the sole purpose of the Legislature in this enactment was to provide for the punishment of a new class of Sabbath breakers; that in that class the theatrical manager and the owner or lessee of the theater were to be treated as principals; and that others who advertised the Sunday show, no matter how or on what day they did so, so long as they did it with knowledge, might be prosecuted for "aiding." The words "and otherwise" can be given no broader meaning than to include those who by advertising, posting, or similarly lend their aid to giving the show. These are they who may be punished as Sabbath breakers for doing acts on secular days which relate to Sunday performances.

Having reached this conclusion, it is apparent that the recitals in the information charge more than one crime in one count. Harrigan's act of labor was his own, for which he might be convicted and fined $10. Bedini labored on his own account, and on conviction might have had similar judgment imposed. These two defendants are also charged with being principals in giving the show, although it is apparent from the statement of facts that they are not. The other defendants are charged with a crime punishable by an entirely different penalty.

This court in May, 1909, held a similar information (People v. Surratt et al., not reported) void for duplicity, and can find no reason for departing from the rule it made in that case.

Demurrer allowed. MOSS, J., concurring. O'KEEFE, J., dissents. without opinion.